

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 1 2 2015

JAMES N. HATTEN, Clerk

By _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION



Out RAGE, LLC,

      Plaintiff,

    v.

Barnett Outdoors, LLC,

      Defendant.

CIVIL ACTION FILE

1:15-CV-0099

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
## AND DEMAND FOR JURY TRIAL

Plaintiff Out RAGE, LLC ("Out RAGE") states its Complaint against Barnett Outdoors, LLC ("Defendant") as follows:

1.    This is an action for trademark infringement and unfair competition in violation of Sections 32 and 43(a) of the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125(a), Georgia Code § 23-2-55, and Georgia common law; deceptive trade practices under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*; Georgia common law unjust enrichment; and Georgia common law misappropriation and conversion. Out RAGE seeks injunctive relief, monetary damages, restitution, and all other appropriate relief, including an order enjoining Defendant from using Out RAGE's trademark, RAGE®.

2.      This action concerns Defendant's knowing and willful violation of Out RAGE's rights in RAGE®, its federally registered and common law trademark, in connection with Defendant's new crossbow, the Barnett Buck Commander Rage a/k/a the BC Rage (the "BC Rage Crossbow"). Defendant has manufactured, promoted, and sold—and continues to manufacture, promote, and sell—the BC Rage Crossbow without authorization and with full knowledge that it is not authorized to use the RAGE® mark.

3.      Defendant's use of the RAGE® mark is likely to cause—and, as described below, has in fact already caused—consumers to believe, erroneously, that Out RAGE has manufactured, sponsored, or endorsed Defendant's BC Rage Crossbow or that Defendant's BC Rage Crossbow is otherwise associated or affiliated with Out RAGE, confusing consumers seeking the products of Out RAGE and unjustly enriching Defendant.

4.      On information and belief, Defendant has profited from its unauthorized use of the RAGE® mark, and has made unauthorized use of the mark in Georgia and elsewhere, to its benefit and to the detriment of Out RAGE and consumers, all in violation of the laws set forth above.

2

## THE PARTIES

5.     Plaintiff Out RAGE, LLC is a Delaware limited liability company with its principal offices at 110 Beasley Road, Cartersville, Georgia 30120.

6.     On information and belief, Defendant Barnett Outdoors, LLC is a Florida limited liability company with is principal offices at 955 Live Oak Street, Tarpon Springs, Florida. Defendant may be served with process by and through its registered agent, J. Matthew Marquardt, 625 Court Street, Suite 200, Clearwater, Florida 33756.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and under 28 U.S.C. §§ 1331, 1337, and 1338 because this action arises under the Lanham Act. This Court has jurisdiction over Out RAGE's state law claims under 28 U.S.C. §§ 1338(b) and 1367(a) as well as under general principles of supplemental and pendent jurisdiction.

8.     This Court has personal jurisdiction over Defendant pursuant to O.C.G.A. § 9-10-91 and federal law on the grounds that, upon information and belief: (a) Defendant transacts business in Georgia; (b) Defendant has committed acts of infringement within and/or directed at residents of Georgia; (c) Defendant's acts of infringement have caused injury within Georgia, and Defendant regularly

3

does or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from goods used or consumed and/or services rendered in Georgia; (d) Defendant purposefully directs activities toward residents of Georgia; (e) the causes of action set forth herein arise from or relate to Defendant's activities in Georgia; and/or (f) the exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice. Specifically, on information and belief, Defendant has, directly and/or through intermediaries, committed acts of trademark infringement and engaged in other tortious conduct in this judicial district by advertising and/or distributing its infringing BC Rage Crossbow in Georgia, including in this judicial district, and such acts have caused financial injury to Out RAGE in Georgia, including in this judicial district.

9.     Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b) because acts and transactions constituting at least a subset of the violations alleged herein have occurred in this judicial district and because Defendant conducts business in this judicial district. Venue is also proper in the Northern District of Georgia under 28 U.S.C. § 1391(c) because Defendant is subject to personal jurisdiction in this judicial district.

## FACTUAL BACKGROUND

### A.   Out RAGE's Widespread and Substantial Use of Its Registered RAGE® Mark

10.     Out RAGE designs and manufactures, and sells throughout the United States, a range of innovative, category-leading products for today's bowhunters, including broadheads, nocks, and releases, all of which are designed to enhance the performance of archers in the field and on the range.

11.     Out RAGE is widely known as the owner of the RAGE® broadhead, a leading type of arrowhead used in bowhunting. When introduced in 2006, the RAGE® broadhead incorporated an innovative design that preserved both the benefits of over-the-top expandable broadheads (e.g. aerodynamic shape in flight) and the benefits of fixed-blade broadheads (e.g. reliable entry on impact). Since the brand's introduction, the RAGE® broadhead has received wide praise in the industry for its paradigm-shifting technology. The RAGE® line of broadheads has become the most popular line of expandable broadheads on the market.

12.     Out RAGE or its predecessors applied to register the RAGE® mark for arrows and associated components, including broadheads, with the United States Patent and Trademark Office ("USPTO") on December 23, 2005, soon before the launch of the RAGE® broadhead.

5

13.    The USPTO granted the application and issued U.S. Trademark Registration No. 3,314,168 for the mark RAGE® on October 16, 2007. A copy of the registration certificate for the RAGE® mark is attached as Exhibit A.

14.    Pursuant to 15 U.S.C. § 1057(b), the registration certificate for the RAGE® mark constitutes *prima facie* evidence of the validity of that registration, of Out RAGE's ownership of the mark set forth therein, and of Out RAGE's exclusive right to use that mark in commerce and in connection with the products specified in the registration certificate.

15.    Pursuant to 15 U.S.C. § 1065, Out RAGE's right to use the RAGE® mark has become legally incontestable.

16.    Out RAGE also owns pending federal intent-to-use registration applications for related marks, including (a) RAGE™ for archery bows, crossbow bolts, and crossbows; (b) RAGE RTT™ for archery arrows; and (c) RAGE TAPER TECHNOLOGY™, also for archery arrows.  Copies of the intent-to-use registration applications for the foregoing marks are attached as Exhibits B through D.

17.    Out RAGE uses (or intends to use) the foregoing marks in connection with a wide range of products well known to, and used by, the bowhunting community and others.

6

18.    In addition to the products identified above, Out RAGE uses one or more of the marks, including the RAGE® mark, in connection with o-rings, quivers, replacement blades, broadhead travel cases, shock collars, hats, and apparel, including t-shirts, sweatshirts, and jackets. Shown below is the RAGE® mark as used in connection with Out RAGE products:

  

19.    Out RAGE has invested and continues to invest in the  foregoing marks, including the RAGE® mark.

20.    As a result of this investment, the bowhunting community and others associate the foregoing marks, including the RAGE® mark, with Out RAGE and Out RAGE's innovative, category-leading products for bowhunters, including the RAGE® broadhead.

21.    For this reason, the marks, including the RAGE® mark, are assets of value as symbols of Out RAGE, its quality products, and its goodwill.

**B.     Defendant's Unlawful Use of the Registered RAGE® Mark**

22.     Defendant holds itself out as the world's number one manufacturer of crossbows. *See* About Barnett Crossbows, http://barnettcrossbows.com/about (last visited Jan. 11, 2015).  According to its website, Defendant sells its products online through leading national retailers such Bass Pro Shops, Cabela's, and Dick's Sporting Goods, as well as in physical stores throughout the United States, including in Georgia. *See* Barnett Crossbows Dealer Locator, http://barnettcrossbows.com/dealers (last visited Jan. 11, 2015).

23.     On or about January 5, 2015, through an alert issued by the outdoor industry's leading newsletter, Out RAGE learned that Defendant had launched, or was soon to launch, the BC Rage Crossbow. *See Barnett Crossbows Offers Buck Commander Rage Model*, THE OUTDOOR WIRE (Jan. 5, 2015), attached as Exhibit E. The newsletter release refers to the BC Rage Crossbow's "strikingly good looks," which were, according to the release, likely to "grab your attention."

24.     On that same day, Out RAGE, through counsel, delivered to Defendant a letter (the "Cease-and-Desist Letter"), informing Defendant that its use of the RAGE® mark violates federal and state law, including the Lanham Act, and demanding that Defendant immediately cease all use of the RAGE® mark, whether as part of "Barnett Buck Commander Rage," other words, or by itself, on

or in connection with any archery, hunting, or related goods and services, including crossbows. A copy of the Cease-and-Desist Letter is attached as Exhibit F.

25.     Defendant, however, has refused to stop using the RAGE® mark.

26.     To the contrary, just three days later, Defendant exhibited products bearing the RAGE® mark at the Archery Trade Association's annual trade show, held January 8–10, 2015 in Indianapolis, Indiana (the "Trade Show").[1]

27.     Below is a photograph of the BC Rage Crossbow taken at the Trade Show:



28.     As the photograph shows, the foregrip of the BC Rage Crossbow includes the text "BC RAGE," and the "RAGE" lettering is larger than the "BC"

---

[1]     The Trade Show is the archery and bowhunting industry's largest trade show, designed to promote commerce within the archery and bowhunting industry. *See* 2015 ATA Trade Show, http://www.archerytrade.org/trade-show (last visited Jan. 11, 2015).

lettering. Shown below is the foregrip, bearing the RAGE® mark, extracted from the Trade Show photograph:



29.     The limb of the BC Rage Crossbow includes the same text, and both the "BC" and the "RAGE" lettering are larger than they are on the foregrip, the "RAGE" lettering again being larger than the "BC" lettering. Shown below is the limb, bearing the RAGE® mark, again extracted from the Trade Show photograph:



30.     The signage used to market the BC Rage Crossbow at the Trade Show is similar. Its largest text, which is placed above a depiction of the BC Rage Crossbow and is the signage's only text printed in color, reads "BC RAGE."

Below is the signage, bearing the RAGE® mark, extracted from the Trade Show photograph:



31.     On information and belief, the BC Rage Crossbow is one in a line of "Buck Commander" or "BC" crossbows manufactured, marketed, and sold by Defendant in partnership with Buck Commander, a company affiliated with the Robertson family, stars of the A&E network's popular "Duck Dynasty" program. On information and belief, Defendant manufactures, markets, and sells the "Buck Commander" or "BC" crossbows pursuant to a licensing agreement with Buck Commander, as the product names suggest. *See* Buck Commander, Licensed Products, http://buckcommander.com/licensed-products (last visited Jan. 11, 2015).

32.     Defendant's unauthorized use of the RAGE® mark is likely to confuse, and in fact has already actually confused, consumers, causing them to believe, erroneously, that the BC Rage Crossbow is manufactured, sponsored, or endorsed by, or otherwise associated or affiliated with, Out RAGE.

33. On information and belief, at the Trade Show, at least five consumers approached one or more members of Out RAGE's promotional staff and inquired about what the consumers believed (erroneously) to be Out RAGE's new BC Rage Crossbow, which they had seen displayed and promoted by Defendant at the Trade Show.

34. At the Trade Show, one or more members of Out RAGE's promotional staff informed Defendant that its use of the RAGE® mark in connection with the BC Rage Crossbow is not authorized and violates Out RAGE's valuable rights in the RAGE® mark.

35. On information and belief, Defendant has taken no action—in response to the Cease-and-Desist Letter, its Trade Show Communications with Out RAGE, or anything else—to end its infringing use of the RAGE® mark and continues to infringe the RAGE® mark today.

36. On information and belief, Defendant has at all times known that its use of the RAGE® mark violates Out RAGE's rights in its RAGE® mark and is likely to confuse, and actually has confused, consumers and causes them to believe, erroneously, that Defendant's BC Rage Crossbow is manufactured, sponsored, or endorsed by, or otherwise associated or affiliated with, Out RAGE and its innovative, category-leading products.

37.    For the foregoing reasons, Defendant's unlawful conduct set forth herein was and continues to be willful, deliberate, and in bad faith.

38.    For the foregoing reasons, Defendant's unlawful conduct set forth herein has caused, and likely will continue to cause, injury to Out RAGE and to consumers.

39.    For the foregoing reasons, Defendant has profited, and likely will continue to profit, from its unauthorized use of the RAGE® mark.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

40.    Out RAGE realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 39 of this Complaint.

41.    Defendant's use of the RAGE® mark violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, because it constitutes willful and deliberate use in commerce of reproductions, copies, and/or colorable imitations of Out RAGE's federally registered RAGE® trademark in connection with the sale, offering for sale, distribution, and advertising of Defendant's products in a manner likely to cause confusion, mistake, and deception.

42.    On information and belief, Defendant's unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

43. Defendant's violations of the Lanham Act have caused and will continue to cause irreparable harm to Out RAGE, for which Out RAGE has no adequate remedy at law. Unless enjoined, Defendant will continue its infringing use of the RAGE® mark, further injuring Out RAGE and confusing the public.

44. On information and belief, as a result of its infringing use of the RAGE® mark, Defendant has received revenues and profits to which Defendant is not entitled, and, also as a result of Defendant's infringing use of the RAGE® mark, Out RAGE has suffered damages for which Defendant is responsible.

## SECOND CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
## (15 U.S.C. § 1125(a)

45. Out RAGE realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 44 of this Complaint.

46. Defendant's infringing use of the RAGE® mark violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendant has willfully and deliberately used in commerce words, terms, names, and/or false designations of origin that likely caused confusion and mistake as to the origin, sponsorship, or approval by Out RAGE of products promoted by Defendant. This conduct constitutes unfair competition and infringement of Out RAGE's RAGE® mark.

14

47. On information and belief, Defendant's unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

48. Defendant's violations of the Lanham Act have caused and will continue to cause irreparable harm to Out RAGE, for which Out RAGE has no adequate remedy at law. Unless enjoined, Defendant will continue its infringing use of the RAGE® mark, further injuring Out RAGE and confusing the public.

49. On information and belief, as a result of its infringing use of the RAGE® mark, Defendant has received revenues and profits to which Defendant is not entitled, and, also as a result of Defendant's infringing use of the RAGE® mark, Out RAGE has suffered damages for which Defendant is responsible.

## THIRD CAUSE OF ACTION
## GEORGIA DECEPTIVE TRADE PRACTICES ACT
### (O.C.G.A. § 10-1-370 *et seq.*)

50. Out RAGE realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 49 of this Complaint.

51. Defendant's unauthorized use of the RAGE® mark constitutes deceptive trade practices under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*, in that Defendant has willfully and deliberately passed off its goods as those of Out RAGE, and likely caused confusion and misunderstanding as to the source, sponsorship, approval or certification by Out

15

RAGE of products promoted by Defendant, or the affiliation, connection, association or certification by Out RAGE of Defendant's products.

52.     The public is likely to be substantially damaged as a result of Defendant's deceptive trade practices.

53.     Unless enjoined, Defendant will continue these deceptive trade practices, thereby deceiving the public and causing Out RAGE immediate and irreparable injury for which it has no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**GEORGIA STATUTORY UNFAIR COMPETITION**
**(O.C.G.A. § 23-2-55)**

54.     Out RAGE realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 53 of this Complaint.

55.     Upon information and belief, Defendant's unauthorized use of the RAGE® mark has been with the intent of deceiving and misleading the public, and thereby attempting to encroach upon the business of Out RAGE, in violation of O.C.G.A. § 23-2-55.

56.     Defendant's unauthorized use of the RAGE® mark has caused, and unless enjoined, will continue to cause immediate and irreparable injury to Out RAGE because actual and potential customers have been and/or are likely confused, deceived, or misled as to the true source, origin, sponsorship, approval,

authorization, association, affiliation, and characteristics of the products offered for sale and sold by Defendant.

## FIFTH CAUSE OF ACTION
## GEORGIA COMMON LAW UNFAIR COMPETITION

57.     Out RAGE realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 56 of this Complaint.

58.     Defendant's unauthorized use of the RAGE® mark has been to pass off its products as those of Out RAGE, trading on Out RAGE's goodwill and reputation, and deceiving the public as to the true nature and characteristics of Defendant's goods, all to Defendant's profit and to Out RAGE's damage.

59.     Defendant's foregoing acts constitute unfair competition under Georgia common law and have caused, and unless enjoined will continue to cause, immediate and irreparable injury to Out RAGE's goodwill and reputation, for which Out RAGE has no adequate remedy at law.

## SIXTH CAUSE OF ACTION
## GEORGIA COMMON LAW TRADEMARK INFRINGEMENT

60.     Out RAGE realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 59 of this Complaint.

17

61. Out RAGE, by virtue of its adoption and use of the RAGE® mark, in this judicial district and elsewhere, has acquired, established, and owns valuable common law rights in the RAGE® mark.

62. Defendant's unauthorized use of the RAGE® mark constitutes copying and imitation of the RAGE® mark, falsely designates the origin of Defendant's products, causes confusion, mistake, and deception in the marketplace, and is likely to cause further confusion, mistake, and deception in the marketplace, and therefore infringes Out RAGE's common law rights in the RAGE® mark in violation of Georgia common law.

63. Defendant's actions complained of herein, unless preliminarily and thereafter permanently enjoined, will continue to result in a likelihood of further confusion, mistake, and deception of the public concerning the sources or origin of products offered for sale and sold by Defendant and will continue to cause irreparable injury and damage to Out RAGE and its goodwill and business reputation, for which Out RAGE has no adequate remedy at law.

## SEVENTH CAUSE OF ACTION
## GEORGIA COMMON LAW UNJUST ENRICHMENT

64. Out RAGE realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 63 of this Complaint.

18

65.  Defendant's unauthorized use of the RAGE® mark in connection with the advertising, promotion, and sale of its goods, from which Defendant has derived profits, has unjustly enriched Defendant by enabling it to misappropriate the RAGE® mark and goodwill associated therewith.

66.  Defendant has earned revenues and profits to which it is not entitled, and Out RAGE continues to be irreparably injured by the foregoing acts of Defendant, which acts have unjustly enriched Defendant at Out RAGE's expense, for which injury Out RAGE has no adequate remedy at law.

## EIGHTH CAUSE OF ACTION
## GEORGIA COMMON LAW MISAPPROPRIATION AND CONVERSION

67.  Out RAGE realleges and incorporates herein by reference the matters alleged in paragraphs 1 through 66 of this Complaint.

68.  Defendant, through its unauthorized use of the RAGE® mark, has misappropriated the RAGE® mark and has unlawfully converted to its own use and exploited Out RAGE's property, name, and commercial likeness, thereby reaping for itself the benefits of Out RAGE's use, promotion, and development of the RAGE® mark and the goodwill associated therewith.

## PRAYER FOR RELIEF

WHEREFORE, Out RAGE respectfully seeks the following relief:

19

69. Enjoin and restrain Defendant, its agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from engaging in any of the following acts: (a) using, without the authorization of Out RAGE, the RAGE® mark or any other name, mark, or domain name that incorporates the RAGE® mark or is confusingly similar to or a colorable imitation of the RAGE® mark; and (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or prospective customers of Out RAGE and/or Defendant as to the source of the products offered for sale, distributed, or sold by Defendant or that is likely to deceive members of the public, or prospective customers, into believing that there is some association, affiliation, endorsement, sponsorship or some other connection between Defendant's products and Out RAGE;

70. Require Defendant, pursuant to 15 U.S.C. § 1118, to destroy all literature, signs, labels, prints, packages, wrappers, containers, advertising materials, Internet content, stationary, software, and any other item in its possession or control that contains the infringing designation "RAGE," or any term confusingly similar to "RAGE," either alone or in combination with other words or symbols and to destroy all plates, molds, matrices, masters, and other means of making any of those infringing items;

20

71.     Require Defendant to file with the Court and to serve on Out RAGE, within thirty (30) days after entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

72.     Require Defendant to pay for all damages sustained as a result of Defendant's unlawful conduct described above, plus interest thereon, and require, with respect to damages resulting from infringement of the RAGE® mark or from unfair competition under the Lanham Act, that such damages be trebled pursuant to 15 U.S.C. § 1117;

73.     Require Defendant to account for and pay to Out RAGE all profits derived by Defendant resulting from its use of the RAGE® mark.

74.     Award Out RAGE the costs of this suit and its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117 and applicable provisions of Georgia law;

75.     Award prejudgment interest on any and all liquidated sums; and

76.     Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Out RAGE hereby demands a trial by jury of all issues so triable.

21

This 12th day of January, 2015.

KENT LAW, P.C.

Daniel A. Kent
Georgia Bar No. 415110
dan@kentiplit.com
555 N. Point Ctr. E. Ste. 400
Alpharetta, GA 30022
Tel: (404) 585-4214
Fax: (404) 829-2412

*Counsel for Plaintiff*

OF COUNSEL:

Kevin B. Collins
Neil K. Roman
R. Jason Fowler
COVINGTON & BURLING
850 Tenth Street, NW
Washington, D.C. 20004-2401
(202) 662-6000